IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN WILKINSON, | : | Case No. 4:15-cv-01916 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| MARVIN E. KLINGER, INC. | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM
May 3, 2016

Pending before this Court is a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant Marvin E. Klinger, Inc. (hereinafter "Defendant") against Plaintiff Susan Wilkinson (hereinafter "Ms. Wilkinson").[1] The motion seeks to dismiss Ms. Wilkinson's complaint in its entirety, including claims for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.*, (hereinafter "ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, (hereinafter "ADEA"), the Pennsylvania Human Relations Act, 43 P.S. § 951 *et. seq.*, (hereinafter "PHRA"), and claims of wrongful discharge and invasion of privacy/intrusion upon seclusion.[2]   This matter has been fully briefed and is

---

[1] ECF No. 12.
[2] *Id.*

1

Case 4:15-cv-01916-MWB   Document 13   Filed 05/03/16   Page 2 of 17


now ripe for disposition. In accordance with the following reasoning, Defendant's

motion to dismiss is granted in part and denied in part.

# I. BACKGROUND

Ms. Wilkinson, who is fifty-eight years old, was employed by Defendant as

a school bus driver for twenty-three years prior to her discharge. On November 21,

2014, Ms. Wilkinson submitted a random drug test which yielded positive results

for opiates and codeine. Ms. Wilkinson, who suffers from migraines and hip pain

due to sciatica, is prescribed medications containing opiates and/or codeine by her

physician. Despite explaining that she had a prescription for the drugs for which

she tested positive, Ms. Wilkinson was discharged from her employment on

December 2, 2014.

## *Defendant's Drug and Alcohol Policy*[3]

Defendant's policy is primarily "concerned about alcohol abuse and illegal

drug use."[4] The following conduct is specifically prohibited by the policy, in

relevant part: "drivers are prohibited from using or being under the influence of

legal drugs that are being used illegally . . . [or] from using or being under the

---

[3] In deciding a 12(b)(6) motion to dismiss, a court may consider limited documents beyond the complaint. Specifically, a court may consider "matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion." *Arzmendi v. Lawson*, 914 F. Supp. 1157, 1160 (E.D. Pa. 1996); *see also Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782, (W.D. Pa. 2000)("Since *Arizmendi*, numerous decisions from this jurisdiction have similarly found that a court may consider an undisputedly authentic document attached to a defendant's motion to dismiss, provided that the plaintiff's claims are based on the document, along with matters of public record . . ."(internal citations omitted)). Defendant's Drug and Alcohol Policy was attached as Exhibit 1 of Defendant's motion to dismiss (ECF No. 5).

[4] ECF No. 5-1 at 1.

influence of legal drugs whose use can adversely affect the ability of the driver to perform his or her job safely" or simply "testing positive for drugs and/or alcohol." For the purposes of the policy, however, "drugs" are defined as "any and all controlled substances, such as but not limited to, marijuana, cocaine, amphetamines, PCP, opiates . . . [and] includes prescription and over-the-counter medications which are being abused."[5]

Under "Test Procedures," the policy provides that a Medical Review Officer will review all drug tests and "is to determine whether positive test results indicate illegal drug use or whether other medical explanations could account for the result."[6] The policy further provides that "[t]he consequence of testing positive for drugs is: Termination."[7]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[8] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[9] This is true of

---

[5] *Id.* at 2.
[6] *Id.* at 5-6.
[7] *Id.* at 7.
[8] *In re Hydrogen Peroxide Litigation*, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989).
[9] *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U. S. 69, 73 (1984)).

any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[10]

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[11] In two landmark decisions, *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal*, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[12] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[13]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] "Although the plausibility standard does not impose a probability requirement, it does require a

---

[10] *Neitzke*, 490 U.S. at 327.
[11] Howard M. Wasserman, *The Roberts Court and the Civil Procedure Revival*, 31 Rev. Litig. 313 (2012).
[12] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, *supra* at 319–20.
[13] *Iqbal*, 556 U.S. at 670 (citing *Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").
[14] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570).
[15] *Iqbal*, 556 U.S. at 678.

4

pleading to show more than a sheer possibility that a defendant has acted unlawfully."[16] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[17]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[18] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[19]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[20] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[21] "After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[22] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[16] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[17] *Twombly*, 550 U.S. at 556.
[18] *Iqbal*, 556 U.S. at 679.
[19] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).
[20] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).
[21] *Iqbal*, 556 U.S. at 678 (internal citations omitted).
[22] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

suffice."[23]

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court
> reviewing the sufficiency of a complaint must take three steps. First, it
> must tak[e] note of the elements [the] plaintiff must plead to state a
> claim. Second, it should identify allegations that, because they are no
> more than conclusions, are not entitled to the assumption of truth.
> Finally, [w]hen there are well-pleaded factual allegations, [the] court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.[24]

## III. DISCUSSION

### A. Violation of the ADA (Count I)

Defendant requests that the Court dismiss Count I of Ms. Wilkinson's

complaint, arguing that she failed to state a claim for violations of the ADA

because her allegations are insufficient to establish that she has a disability, that

she is a qualified individual under the Act, and that she has suffered an adverse

employment action because of her disability. Ms. Wilkinson argues in opposition

that she has, in fact, pled sufficient facts to establish a claim under the ADA.

The ADA protects "qualified individual[s]" from discrimination by

employers "on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job

---

[23] *Iqbal*, 556 U.S. at 678.
[24] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

training, and other terms, conditions, and privileges of employment."[25]

Discrimination includes "not making reasonable accommodations to the known

physical or mental limitations of an otherwise qualified [employee] with a

disability . . . unless [the employer] can demonstrate that the accommodation

would impose an undue hardship on the operation of the business . . ."[26]

Discrimination also includes "utilizing standards, criteria, or methods of

administration that have the effect of discrimination on the basis of disability."[27]

To plead a *prima facie* case under the ADA, a plaintiff must establish that he

or she 1) has a disability, as defined by the ADA, 2) is a "qualified individual," and

3) has suffered an adverse employment action because of the disability. For the

purposes of the ADA, a "disability" is "a physical or mental impairment that

substantially limits one or more major life activities, a record of such an

impairment, or being regarded as having such an impairment."[28] Major life

activities can include, among other things, "caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending,

speaking, breathing, learning, reading, concentrating, thinking, communicating,

and working."[29] A "qualified individual" is one "who, with or without reasonable

---

[25] 42 U.S.C. § 12112(a).
[26] 42 U.S.C. § 12112(b)(5)(A).
[27] 42 U.S.C. § 12112(b)(3)(A).
[28] 42 U.S.C. § 12102(1).
[29] 42 U.S.C. § 12102(2)(A).

accommodation, can perform the essential functions of the employment position that such individual holds or desires."[30]

In the matter at hand, Ms. Wilkinson alleges in her complaint that she suffers from migraines and hip pain due to sciatica.[31] She further alleges that she is a qualified individual under the ADA because she has "a disability that substantially limited/limits one or more major life activities, or because she had record of such impairment,"[32] and because "she was regarded as and/or perceived by Defendant and its agents as having one or more major life activities."[33] While Ms. Wilkinson does not specify, it can be easily deduced that the disabilities to which she refers are her migraines and hip pain.

Ms. Wilkinson has also pled that she suffered an adverse employment action in that she was terminated from her employment "on the basis of her disability or perceived disability."[34] She has also pled that she is a "qualified individual" under the act because her "disabilities never interfered with her ability to do her job,"[35] a job that she had been qualified to perform for the twenty-three years that she was employed before her termination.[36] Accordingly, Ms. Wilkinson has sufficiently pled a *prima facie* case under the ADA.

---

[30] 42 U.S.C. § 12111(8).
[31] ECF No. 1 at ¶ 23.
[32] ECF No. 1 at ¶ 30.
[33] ECF No. 1 at ¶ 31.
[34] ECF No. 1 at ¶ 32.
[35] ECF No. 1 at ¶ 28.
[36] ECF No.1 at ¶ 19.

Defendant argues that Ms. Wilkinson's allegations suggest that she was terminated because of her positive drug test, not that she was terminated because of her disability. Defendant further cites *Castro v. Child Psychiatry Ctr.*,[37] in support of its argument. In *Castro*, the plaintiff suffered from migraines and was prescribed medication which, when tested, resulted in a positive drug test.[38] As a result, that plaintiff was terminated from her employment as a teacher's aide/van monitor.[39]

Defendant cites *Castro* for the contention that "the ADA permits employers to establish or comply with certain standards regulating the use of drugs and alcohol in the work place and that the implementation of a drug screening program by the employer precluded plaintiff from working as a van monitor based on the positive test result."[40] While this conclusion could conceivably be extrapolated from the holding in *Castro*, a less constrained reading of this decision renders it distinguishable from the case at hand. The court in *Castro* held that the plaintiff successfully established that she was terminated as a result of disability discrimination because the defendant's nondiscriminatory rationale for firing her— that she failed a drug test necessary to hold the position of van monitor—was only a pretext because the van monitor duties were an insignificant part of her position

---

[37] 1997 WL 141860 (E.D. Pa. March 25, 1997).
[38] *Id.* at *1-2.
[39] *Id.* at *2.
[40] ECF No. 10 at 4-5.

and she could have continued to perform her position with a reasonable accommodation.

As is clear from the Defendant's opposing brief, passing random drug tests is necessary for Ms. Wilkinson's former position as a bus driver. This fact alone makes *Castro* distinguishable. Furthermore, at this early stage in the litigation, the actual reason for Ms. Wilkinson's termination remains unclear.[41] Accordingly, engaging in discovery could lead to evidence supporting Ms. Wilkinson's position that, like the defendant in *Castro*, Defendant's reason for discharging Ms. Wilkinson (the positive drug test) may have been a pretext for disability discrimination.

## B. Violation of the ADEA (Count II)

The ADEA provides that it is "unlawful for an employer" to "discharge any individual . . . because of such individual's age . . ."[42] To establish a claim under the ADEA, a plaintiff must establish that 1) she is over forty years old, 2) she is qualified for the position, 3) she suffered from an adverse employment action, and 4) she was replaced with a significantly younger person.[43] A plaintiff must also

---

[41] It is unclear at this time whether Defendant intends to attribute its decision to terminate Ms. Wilkinson to her positive drug test. If so, discovery is necessary to determine whether Ms. Wilkinson actually violated the drug and alcohol policy, which is "concerned with alcohol abuse and *illegal* drug use" and defines "drugs" as including "prescription drugs . . . which are being *abused.*" ECF No. 5-1 (emphasis added). Discovery is also necessary to determine what steps were taken in determining whether Ms. Wilkinson's legally prescribed drugs adversely affected the ability of her to perform her job safely.

[42] 29 U.S.C. § 623.

[43] *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006) (*citing Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

prove by a preponderance of the evidence that her age was the "but-for" cause of the adverse employment action.[44]

Defendant argues that Ms. Wilkinson has failed to establish sufficient facts to establish that age, rather than the positive drug test, was the "but-for" cause of her termination. Ms. Wilkinson concedes that, at this time, she is unable to satisfy the fourth element of the analysis of a claim under the ADEA but argues that the other elements have been sufficiently pled and that discovery may lead to evidence supporting this element of the claim. She argues that at this early stage in the litigation, the Court should allow her to proceed on this claim.

Specifically, Ms. Wilkinson has pled that she is fifty-eight years old, that she is qualified for the position in that she held it without incident for twenty-three years, and that she was terminated from her employment. As stated above, Ms. Wilkinson admits that she is unable, at this time, to plead whether or not someone significantly younger has replaced her.

Ms. Wilkinson has failed to plead any facts to support the contention that age was the "but-for" cause of her termination, in light of her statements that she was fired after a positive drug test. While Ms. Wilkinson states that she was terminated "pretextually because of her age,"[45] this conclusory statement, with nothing more, is not sufficient to establish that she was terminated due to age

---

[44] *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176 (2009).
[45] ECF No.1 at ¶ 27.

discrimination and not due to her positive drug test. Accordingly, this count is dismissed, with leave to amend.

## C. Violation of the PHRA (Count III)

Like the ADA and ADEA, the PHRA establishes a right to freedom from discrimination on the basis of disability and age in employment, among other things.[46] Disability and age discrimination claims filed under the PHRA are analyzed under the same standards as claims under the ADA and the ADEA, delineated above.[47] Defendant argues that, because of this, Ms. Wilkinson's count under the PHRA should be dismissed along with the ADA and ADEA claims because she failed to plead sufficient facts for any of them to survive.

As analyzed above, Ms. Wilkinson has pled sufficient facts for her count under the ADA to survive. Therefore, Ms. Wilkinson's claim under the PHRA with regard to alleged disability discrimination likewise survives. With regard to age discrimination, however, Ms. Wilkinson's claim under the PHRA is dismissed, with leave to amend.

## D. Wrongful Discharge (Count IV) and Invasion of Privacy/Intrusion Upon Seclusion (Count V)

---

[46] 43 P.S. § 953.
[47] *See Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 568 n. 2 (3d Cir. 2002) (" the PHRA is premised upon language similar to that of the ADA and . . . that language is generally interpreted in accordance with the judicial construction of the ADA"); *Bernard v. Bethenergy Mines, Inc.*, 837 F. Supp. 714, 715 (W.D. Pa. 1993)("parallel state age discrimination claim under the PHRA is analyzed using the same shifting-burdens analysis employed in ADEA claims").

Defendants further argue that Ms. Wilkinson's claim for wrongful discharge must be dismissed because termination of a school bus driver for failing to pass a random drug test does not threaten a clear mandate of public policy. Ms. Wilkinson argues that there are public policy implications of Defendants' behavior in that Ms. Wilkinson was fired for taking legally prescribed narcotics for legitimate medical reasons.

Generally, "absent a contractually or statutory provision to the contrary, employees are at-will and may be terminated at any time, for any reason or for no reason."[48] Exceptions to this rule have been recognized only in the most limited of circumstances where a clear mandate of public policy of the Commonwealth of Pennsylvania is violated.[49] Pennsylvania courts have construed the public policy exception narrowly, "lest the exception swallow the general rule."[50] Public policy, however, "is not limited to 'that which has been legislatively enacted.'"[51] To be cognizable, non-legislatively enacted public policy must be extremely clear and accepted virtually universally.[52]

---

[48] *Raimondi v. Wyoming Co.*, 2015 WL 1729377, *4 (M.D. Pa. April 15, 2015) (*citing Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 334 (Pa. 1995)).
[49] *Geary v. U.S. Steel Corp.*, 319 A2d 174, 184 (Pa. 1974); *Conklin v. Moran Indus., Inc.*, 2011 WL 2135647, *5 (E.D. Pa. May 31, 2011).
[50] *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2003).
[51] *Id.* at 112 *quoting Shick v. Shirey*, 716 A.2d 1231 (Pa. 1998).
[52] *Id.* at 112. *See also Clark v. Modern Group Ltd.*, 9 F.3d 321, 328 (3d Cir. 1993)(provides detailed discussion of case law on the public policy exception).

In her brief in opposition, Ms. Wilkinson cites *Borse v. Piece Goods Shop, Inc.*,[53] a case decided by the United States Court of Appeals of the Third Circuit, in support of her contention that Defendant violated public policy when it discharged her.[54] The plaintiff in *Borse* brought a wrongful discharge suit against her employer when she was discharged after refusing to take a drug test. The Third Circuit held that "discharging a private-sector, at-will employee for refusal to consent to drug testing and to personal property searches may violate the public policy embodied in the Pennsylvania cases recognizing a cause of action for tortious invasion of privacy."[55] The court further adopted the following "fact-intensive" analysis to be used in tortious invasion of privacy wrongful discharge claims:

> The test we believe that Pennsylvania would adopt balances the employee's privacy interest against the employer's interest in maintaining a drug-free workplace in order to determine whether a reasonable person would find the employer's program highly offensive.[56]

Defendant argues that Ms. Wilkinson's invasion of privacy count (Count V), and consequently her wrongful termination count (Count IV), fail as a matter of law because Ms. Wilkinson consented to the random drug test. Defendant cites

---

[53] 963 F.2d 611 (3d Cir. 1992).

[54] It is important to note that the PHRA provides remedies for a claim of wrongful discharge; a plaintiff must therefore first utilize administrative remedies under the PHRA before asserting a wrongful discharge claim in federal court. *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917, 919 (Pa. 1989); *see also Weaver v. Harpster*, 975 A.2d 555, 560 (Pa. 2009). Accordingly, Ms. Wilkinson is unable to assert that a violation of the PHRA, which is to say, Count III, gives rise to the public policy exception for her wrongful discharge claim.

[55] *Id.* at 613.

[56] *Id.* at 624.

14

*Watson v. Vulcraft Sales Corp.*,[57] an unpublished decision of the United States District Court for the Western District of Pennsylvania which granted the defendant's motion to dismiss an action filed by a plaintiff discharged from his employment after testing positive for amphetamines attributed to his lawfully prescribed Attention Deficit Hyperactivity Disorder medication.[58] *Watson*, however, is distinguishable from the case at bar because the plaintiff filed an action for breach of contract, not wrongful discharge.[59] The *Watson* court did indicate, however, that had the plaintiff filed an action for wrongful discharge, it would likely fail because the plaintiff signed a consent to the drug testing policy; the policy was not examined by the court as it was not relevant to the breach of contract action.[60]

Conversely, in *Rowles v. Automated Prod. Systems*,[61] Judge Sylvia H. Rambo of this Court engaged in a thorough analysis of a drug policy when the plaintiff asserted a tortious invasion of privacy wrongful discharge claim.[62] In *Rowles*, the plaintiff was hired and began working with the condition that he would take and pass a drug test.[63] Pursuant to the drug policy, however, the plaintiff was to be discharged if he tested positive for any substance, including legally

---

[57] 2012 WL 2572056, *6 (W.D. Pa. July 2, 2012).
[58] *Id.* at *1.
[59] *Id.*
[60] *Id.* at *6.
[61] 1999 U.S. Dist. LEXIS 21605 (M.D. Pa. March 26, 1999).
[62] *Id.* at *34.
[63] Id. at *2-3.

prescribed medications.[64] He refused the drug test and was subsequently terminated.[65] After examining the text of the drug policy, Judge Rambo granted the plaintiff's motion for partial summary judgment with respect to the claim that the drug policy violated the ADA because it prohibited the use of all legally prescribed controlled substances.[66] It further held that "there are substantial unresolved issues of material fact which go to whether [the] drug and alcohol abuse policy, both on its face and in its implementation, constituted an invasion of [plaintiff's] privacy."[67]

Ms. Wilkinson concedes that she signed Defendant's drug policy, consenting to random drug tests. She further admits that, unlike the plaintiffs in *Borse* and *Rowles*, she did not refuse the drug test. Ms. Wilkinson argues that regardless of the consent form, however, this Court should allow her to proceed to discovery so that evidence can be gathered to allow the Court to properly conduct a "fact-intensive analysis" and balancing test to determine whether Defendant's drug policy was intrusive on her seclusion or invaded her privacy, as directed by the Third Circuit in *Borse*.[68]

---

[64] *Id.* at *8, *20.

[65] *Id.* at *9.

[66] *Id.* at *41.

[67] *Id.* Later, upon reconsideration, the court held that it erroneously granted partial summary judgment because it had indeed identified disputed issues of material fact on the issue. *Rowles v. Automated Prod. Systems, Inc*., 92 F.Supp.2d 424, 431 (M.D. Pa. 2000). This holding, however, does not change the outcome; the issue of whether the policy violated the ADA, on its face and/or in its implementation, was an issue for the jury to decide. *Id.*

[68] 963 F.2d 611, 624 (3d Cir. 1992).

This Court agrees that Ms. Wilkinson should be afforded the opportunity to obtain discovery on the drug and alcohol policy and its implementation so that this Court can appropriately conduct the *Borse* balancing test.

## IV. CONCLUSION

In accordance with the foregoing analysis, Defendant's motion to dismiss is granted in part and denied in part. Defendant's motion is denied with regard to Counts I, IV, and V. Defendant's motion is also denied with regard to Count III, to the extent that it is predicated on disability discrimination. Defendant's motion is granted with regard to Count II and Count III, to the extent that it is predicated on age discrimination. Plaintiff is granted leave to amend Counts II and III.

An appropriate Order follows.


BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge